UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HENRY JAMES DAVIS,

    PETITIONER,

V.

WARDEN ROEHRICH,

    RESPONDENT.

CIVIL NO. 09-2155 (ADM/AJB)

**REPORT AND RECOMMENDATION**

Henry James Davis, Prisoner No. 221428, 1101 Linden Lane, Faribault, MN 55021 (pro se);

Lori Swanson, Minnesota Attorney General, Bremer Tower, Suite 1800, 445 Minnesota Street, St. Paul MN 55101-2134; and

Michael O. Freeman, Hennepin County Attorney, Michael K. Walz, Assistant Hennepin County Attorney, 300 S. 6th Street, Suite A-2000, Minneapolis MN 55487 (for respondent)

## I.  INTRODUCTION

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1]. Petitioner Henry James Davis is a prisoner confined at the Minnesota Correctional Facility in Faribault, Minnesota, following his conviction and sentencing in Hennepin County District Court. Petitioner was found guilty by a jury on a charge of fleeing a peace officer in a motor vehicle resulting in death. *See* Minn. Stat. § 609.487, subd. 4. The jury also found that there was an aggravating factor in the offense in that Petitioner's conduct was particularly serious and represented a greater than normal danger to the public. Petitioner was sentenced to a prison term

of 210 months. The action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

Petitioner alleges in his petition that (1) the district court erred in admitting a gun into evidence; (2) the district court erred because the jury instruction and verdict form misstated the law; and (3) the district court erred by permitting the prosecutor to access a copy of Petitioner's statement to the Internal Affairs Unit of the Minneapolis Police Department without first conducting an in-camera inspection. For the reasons stated below it is **RECOMMENDED** that the petition [Docket No. 1] be **DENIED**.

## II. BACKGROUND

### a. *Factual Background*

The facts underlying Petitioner's case are as follows:

> Following a report of shots fired from an older, white, four-door Ford Taurus in the area of 14th Avenue North and Girard Avenue North in Minneapolis, police officers went to the area and interviewed witnesses. Two witnesses told the officers that they heard shots coming from the described car, which was occupied by two black males. Other squad cars in the area were alerted to be on the lookout for the vehicle.
>
> About one hour and 45 minutes later, while on patrol in north Minneapolis, officers James Burns and Sean McGinty saw a white Ford Taurus run a stop sign. As they pulled up behind the car and activated their squad-car lights, Burns and McGinty noticed that the Taurus matched the description of the car involved in the shots-fired call. The Taurus did not stop, but instead turned north and abruptly accelerated to a high speed. The officers continued to pursue the Taurus, activating the squad's siren and video camera. The Taurus ran another stop sign, then hit a tree as it attempted to turn right. The video from the squad car shows the Taurus dipping forward and its brake lights coming on for the first time just before it hit the tree.
>
> The Taurus's driver, [Petitioner,] was severely injured in the accident. The front-seat passenger, Roger Davis, [Petitioner's] cousin, died from injuries sustained in the crash. [Petitioner's]

alcohol concentration two hours after the accident was .054. There was expert testimony at trial that it could have been as high as .08 at the time of the accident. [Petitioner] was charged with one count of fleeing a peace officer in a motor vehicle resulting in death.

Officers found a loaded .38 caliber revolver in the debris from the crash. The serial number was scratched off the gun. A hole in the car's windshield was consistent with the gun having been catapulted through the windshield at the time of the crash.

While [Petitioner] was in police custody in the hospital, he indicated that he wanted to lodge a complaint against the police. An officer from the Minneapolis Police Department Internal Affairs Unit (IAU) took [Petitioner's] statement at the hospital. Because the officer was not interrogating [Petitioner], he did not give a *Miranda* warning. [Petitioner] told the IAU officer that he felt the police car bump the Taurus at the beginning of the pursuit, which forced his right leg down on the accelerator. [Petitioner] said he tried to brake with his left foot but the brakes were inoperable, and because he could not stop, he crashed into the tree.

Subsequent forensic examination of the Taurus showed that one of its brakes was extensively damaged in the crash, one of the three remaining brakes was functioning but had no braking effectiveness, and the other two brakes, though worn, were in working condition. Based on this evidence, in addition to the video from the squad car, which was played for the jury during trial, the forensic examiner concluded, to a reasonable degree of scientific certainty, that the brakes were properly functioning and were not a factor in the crash.

[Petitioner] was represented by a public defender at his first appearance on the criminal charge on May 30, 2006. [Petitioner] demanded a speedy trial, and trial was scheduled for July 31, 2006. But at a hearing on July 28, 2006, [Petitioner's] counsel requested a continuance because he was involved in an ongoing trial in another case and would not be available to defend [Petitioner] until a month after the scheduled trial date. [Petitioner] did not waive his right to a speedy trial, but the district court, after informing [Petitioner] that he, "in essence," was causing the delay due to the unavailability of his counsel, rescheduled [Petitioner's] trial to August 28, 2006. The district court told [Petitioner] that, if convicted, he could not complain later that he was denied his right to a speedy trial. The district court asked [Petitioner] if he understood and [Petitioner] responded, "Yes, sir." Davis further indicated that he fully understood and did not have any questions.

> On the first day of trial, [Petitioner] waived his right to counsel and chose to represent himself. The district court appointed the public defender as advisory counsel. The questions of [Petitioner's] guilt and the presence of an aggravating factor—whether [Petitioner's] "conduct was particularly serious and represented a greater than normal danger to the public"—were submitted to the jury at the close of trial. The jury found [Petitioner] guilty and found the existence of the aggravating factor. Despite the jury's finding of the aggravating factor, the district court sentenced [Petitioner] within the guidelines to a 210-month prison term.

*State v. Davis*, No. A07-0331, 2008 WL 2020402, at *1-2 (Minn. App. May 13, 2008), *review denied* (Minn. Aug. 5, 2008).

### b. *Procedural History*

Following Petitioner's conviction and sentencing, Petitioner appealed to the Minnesota Court of Appeals, arguing through counsel that (1) "his right to a speedy trial was violated," *id.* at *2; (2) "the district court's failure to instruct the jury on the defenses of 'duress or necessity' was reversible error," *id.* at *5; (3) "the district court erred by ordering disclosure of the statement he made to Officer Gross of the IAU without first conducting an in camera review," *id* at *7; and (4) "the district court's decision to submit the issue of the presence of an aggravating sentencing factor to the jury at the same time as the issue of guilt deprived him of his right to a fair trial on the issue of guilt." *Id.* at *8. Plaintiff also submitted a pro se supplemental brief to the Minnesota Court of Appeals in which he argued that (1) the district court erred when rendering the jury instruction and verdict forms; (2) the district court made a "non-reversible error" in admitting the gun into evidence; and (3) the district court erred in denying his motion for retrial. *Id.* at *9. The Minnesota Court of Appeals affirmed Petitioner conviction and sentence. *Id.* at *11. Petitioner sought review by the Minnesota Supreme Court, which denied his peitition on August 5, 2008. Plaintiff also petitioned for a writ of certiorari to the United States

Supreme Court, which was denied on January 12, 2009. *Davis v. Minnesota*, 129 S. Ct. 924 (2009).

### III. DISCUSSION

#### a. *Standard of Review*

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas review is limited to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court decision is an "unreasonable application" of federal law if it "identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522).

5

When reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

Furthermore, a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). ). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732; *see Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir.1996) (en banc) (stating a prisoner cannot raise federal constitutional claims for the first time on petition for federal habeas corpus relief). The federal nature of the claim must be "fairly presented" in state court by reference to "a specific federal constitutional right, particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005). "[O]rdinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004).

When a petitioner has failed to fairly present federal constitutional claims in state court, the federal court must determine whether the state procedural rules would allow a hearing on the merits in a state court proceeding. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir.1997). If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Under Minnesota law, "[o]nce a [defendant] has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." *Cooper v. State*, 745 N.W.2d 188, 190 (Minn. 2008) (quoting *Knaffla*, 243 N.W.2d at 741). The *Knaffla* rule has been in place for over 30 years and is codified in Minn. Stat. § 590.01, subd. 1. See 9 Minn. Prac., Criminal Law and Procedure § 39.1 (3rd ed.) (stating *Knaffla* rule is "frequently and strictly applied to deny relief in post conviction proceedings).

### b. *Issues before the Court*

Question 12 of the Petition [Docket No. 1] directs a petitioner to "[s]tate *concisely* every ground on which you claim that you are being held unlawfully." Petitioner raises three grounds: (1) the admission of the gun; (2) the rendering of the jury instruction and the verdict forms; and (3) the admission of his statement to the IAU. The Petition provides room for a fourth claim, but that space was left conspicuously blank.

Question 9(d) asks Petitioner to list the grounds raised upon his initial appeal. Petitioner wrote as follows: "Denied State and Federal constitutional right to speedy trial. At the end of this petition on page 1 are the other grounds raised." Indeed, Petitioner attached an additional page, which is labeled "page 1." At the top of "page 1," Petitioner wrote: "The Following . . . goes with question 9(d) under grounds raised." The page lists the issues raised on his appeal to the Minnesota Court of Appeals.

Question 9(f) asks: "If you filed a petition for certiorari to the United States Supreme Court, please answer the following with respect to each direct appeal." Question 9(f)(4) again asks the petitioner to list the grounds raised in that petition. Petitioner wrote "District Court err[ed] in admitting evidence [(i.e., the gun)] without proof. At [the] end of this petition is other grounds raised." Petitioner attached "page 2," which begins "[t]he following goes with question 9(f)(4)." The page lists each issue raised in his petition for certiorari.

In contrast to the three issues raised by Petitioner to this Court, Respondent's brief addresses six issues.[1] As described above, the Petition before this Court evinces that Petitioner clearly understands the difference between issues previously raised and issues that he wishes this Court to address. In contrast to many submissions that this Court reviews, Petitioner's filing is appreciably concise and decidedly clear. Like a skilled attorney, Petitioner surveyed the horizon of possible arguments and selected those which he concluded were meritorious. Conversely, Respondent has placed before this Court numerous pages of irrelevant arguments directed

---

[1] The issues are as follows issues: (1) Petitioner's right to a speedy trial; (2) Petitioner's claim that the trial court erred in admitting a gun into evidence; (3) Petitioner's claim that the jury instructions misstated the law; (4) Petitioner's claim that the trial court erred in allowing the prosecution to view a copy of petitioner's statement to police; (5) Petitioner's argument that the district court erred in failing to instruct the jury on "duress or necessity"; and (6) Petitioner's new trial motion. (Resp't Mem. Sept. 23, 2009.)

towards claims that Petitioner has not put before this Court. This Court has ignored Respondent's irrelevant arguments and will only address those issues put before this Court by Petitioner.

### c. *Admission of the Gun*

Plaintiff contends that the trial court erred by admitting the gun into evidence because two fingerprint technicians at the Minneapolis Police Department confirmed that Petitioner's fingerprints were not on the gun and gun was not found within the automobile. (Pet.'s Mem. 6-8, Nov. 9, 2009.) Petitioner contends that the admission of the gun violated the Fourteenth Amendment, and Federal Rules of Evidence 403 and 404(b). (*Id.*)

This Court concludes that Petitioner has not exhausted his state remedies and is in procedural default. Petitioner's appellate brief to the Minnesota Court of Appeals does not raise this issue. Petitioner's pro se supplement brief to the Minnesota Court of Appeals raised this issue, but did not assert any "specific federal constitutional right, particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in reference to this argument." *Cox*, 398 F.3d at 1031. Petitioner only cites to Minnesota Supreme Court cases and the Minnesota Rules of Evidence. (Pet.'s Pro Se Supp. App. Br. 15-16, Aug. 28, 2007) (citing *State v. Ness*, 707 N.W.2d 676 (Minn. 2006); *State v. Lubenow*, 310 N.W.2d 52 (Minn. 1981)[2]; *State v. Griller*, 583 N.W.2d 736, 738 (Minn. 1998); *State v. Harris*, 521 N.W.2d 348 (Minn. 1994); *State v. Haney*, 219 Minn. 518, 519, 18 N.W.2d 315 (1945); Minn. R. Evid. 103, 403). The only case cited by Petitioner that addresses relevant federal authority is *Harris*, which quotes *United States v. Kandiel*, 865 F.2d 967, 972-73 (8th Cir.1989), for its enumeration of the requirements within Minn. R. Evid. 404(b). 521 N.W.2d at 354. But,

---

[2] Petitioner cited "*State v. Lubenow*, 310 N.W.2d 810 (Minn. 1984)." (Pet.'s Pro Se Supp. App. Br. 15.) *State v. Lubenow* was decided in 1981. 310 N.W.2d at 52. And the citation "310 N.W.2d 810" applies to *People v. Munson*, 109 Mich. App. 39, 40, 310 N.W.2d 810, 811 (1981). *Munson* does not raise a pertinent federal constitutional issue. *Id.*

9

Petitioner does not cite *Harris* for the proposition enunciated by *Kandiel* and the section of *Kandiel* that is quoted is merely a description of Fed. R. Evid. 404(b). Thus, the authorities cited in Petitioner's pro se supplemental appellate brief do not raise a pertinent federal constitutional issue. To wit, to the extent that Petitioner may have one, Petitioner has failed to fairly present a federal constitutional claim in state court arising out of the admission of the gun into evidence.

Petitioner contends that he "exhausted state remedies by putting all issues to the United State's eight circuit district court." (Pet.'s Mem. 9, Nov. 9, 2009.) This Court has no records to support that Petitioner appealed the decision of the Minnesota Supreme Court to the Eighth Circuit Court of Appeals or any United States District Court prior to the present petition for a writ of habeas corpus. Petitioner petitioned for a writ of certiorari to the United States Supreme Court. But, whether Petitioner put constitutional arguments before the United States Supreme Court is irrelevant for the purposes of the present action. "[T]he exhaustion doctrine is designed to give the *state courts* a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732 (emphasis added). Thus, raising constitutional claims for the first time in a petition for a writ of certiorari to the United States Supreme Court does not satisfy a petitioner's burden to present constitutional issues to the state courts. This conclusion finds further support in the fact that, with rare exceptions, the United States Supreme Court "adhere[s] to the rule in reviewing state court judgments under 28 U.S.C. § 1257 that [it] will not consider a petitioner's federal claim unless it was either addressed by, or properly presented to, the state court that rendered the decision we have been asked to review." *Adams v. Robertson*, 520 U.S. 83, 86-87, 117 S.Ct. 1028, 1029-30 (1997).

In addition to exhausting his state remedies, Petitioner's claims are procedurally barred because any constitutional claim Petitioner could have raised regarding the admission of the gun into evidence, was known to Petitioner at the time of his direct appeal to the Minnesota Court of Appeals. Minn. Stat. § 590.01, subd. 1; *Cooper*, 745 N.W.2d at 190. Thus, this Court cannot consider Petitioner's claim unless Petitioner can demonstrate "either cause for his default and actual prejudice, or that the failure to consider his claims would result in a fundamental miscarriage of justice." *McCall*, 114 F.3d at 758. Petitioner has made no argument or showing as to why he could not present this issue to the Minnesota Court of Appeals at the time of his direct appeal. "The fundamental miscarriage of justice exception is . . . only available to a petitioner who demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (quotation omitted). Petitioner makes no argument as to how he was actually innocent.

Therefore, this Court concludes that Petitioner Davis's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1] should be denied to the extent that it is premised upon the admission of the gun into evidence at his trial.

### d. *Jury Instruction and Verdict Form*

Petitioner contends that the jury instruction and verdict form misstated the law, and confused and mislead the jury. (Pet. 5, Aug. 18, 2009.) Petitioner attached a copy of a "VERDICT OF GUILTY" form for *State of Minnesota v. Henry James Davis*, Court File No. 06025779, which states:

> We, THE JURY, find the defendant guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle.
>
> We, THE JURY, find that the conduct alleged was particularly serious and represented a greater than normal danger to the public.
>
> YES_____ NO_____

(Pet. Attachment 5, Aug. 18, 2009.) Petitioner contends that the jury instruction and verdict form must enunciate the offense as "fleeing a peace officer in a motor vehicle *resulting in death*." (Pet.'s Mem. 9, Nov. 9, 2009) (emphasis added).

In his supplemental pro se appellate brief to the Minnesota Court of Appeals, Petitioner argued that the state and trial court had a duty to provide a "clean and understandable" jury instruction and the jury instruction that was provided shifted the burden on to Petitioner, and failure to include the "cause death" element mislead and confused the jury. (Pet.'s Pro Se Supp. App. Br. 13-14.) Petitioner also argued that the jury deliberated twice, which violated his right to due process. (*Id.* at 14.) In response to his argument, the Minnesota Court of Appeals stated:

> [Petitioner] argues that the verdict forms that the district court initially gave to the jury were misleading and confusing because they stated the charge as "Fleeing a Peace Officer in a Motor Vehicle-Causing Death," but "Causing Death" was not repeated in the ultimate question of guilty or not guilty. During deliberations, the jury requested clarification from the court regarding this inconsistency by circling and underlining certain portions of the form to demonstrate the missing language. After conferring with the state and [Petitioner], the court brought the jury into the courtroom and instructed them that the mistake on the forms was the court's mistake. The court told the jury that the forms should have said, "We, the jury, find the defendant not guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle-Causing Death," and "We, the jury, find the defendant guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle-Causing Death."

*Davis*, 2008 WL 2020402, at *9. Based upon this correction, the Minnesota Court of Appeals concluded that there is no error. *Id.*

In his pro se supplemental appellate brief, Petitioner cited Minnesota Supreme Court cases and the Minnesota Rules of Criminal and Civil Procedure. (Pet.'s Pro Se Supp. App. Br. 13-14) (citing *State v. Jackson*, 714 N.W.2d 681 (Minn. 2006); *Lee v. Hamilton*, 841 N.E.2d 223 (Ind. App. 2006); *State v. Peterson*, 673 N.W.2d 482 (Minn. 2004); *State v. Malaski*, 330 N.W.2d 447 (Minn. 1983); *State v. Butler*, 295 N.W.2d 658 (Minn. 1980); *Forsythe v. City of Thief River Falls*, 296 Minn. 337, 208 N.W.2d 756 (1973); *Botz v. Krips*, 267 Minn. 362, 126 N.W.2d 446 (1964); Minn. R. Crim P. 26.03, subds. 18, 19; Minn. R. Civ. P. 49, 51, 51.02). These authorities do not raise a pertinent federal constitutional issue.

But, Petitioner also cited *Yate v. Aiken*, 484 U.S. 211, 108 S. Ct. 534 (1988), for the proposition that the jury instruction initially used shifted the burden of proof onto him. (Pet's Pro Se Supp. App. Br. 13.) And Petitioner cited *Tompkin v. Phillip Morris*, 362 F.3d 882 (6th Cir. 2004) for the proposition that a jury instruction that misstates the law is clearly erroneous. (*Id.* at 14.) While Petitioner exhausted these claims, this Court concludes that Petitioner has not satisfied his burden under 28 U.S.C. § 2254(d).

> The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. This bedrock, axiomatic and elementary constitutional principle, prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.

*Yates*, 484 U.S. at 214, 108 S. Ct. at 536. The Minnesota Court of Appeals' analysis was neither contrary to, nor involved an unreasonable application of, this axiomatic and elementary priniciple, nor was the decision based on an unreasonable determination of the facts.

In the Petitioner's case, the jury instruction and verdict form did not shift the burden of proof from the state onto the Petitioner. Indeed, the trial court prefaced the instructions by

stating "I will outline the essential elements that the state must prove." (Tr. 133.) The trial court further stated:

> The first rule is that the defendant is presumed innocent, unless and until the state proves his guilt.
>
> . . .
>
> The second rule is that the burden of proving defendant's guilt is on the state. The state has the burden throughout the trial. The defendant never has any burden to prove his innocence, for he is presumed to be innocent. The state must convince you by evidence beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant has no obligation to prove his innocence.
>
> The third rule is that the state must prove each essential element of the alleged crime beyond a reasonable doubt.

(Tr. 134-35.) The trial court later instructed: "The defendant in this case is charged with one count, Fleeing a Peace Officer in a Motor Vehicle, Causing Death." (Tr. 140.) While explaining each essential element, the trial court stated: "Fourth, the defendant, in the course of fleeing or attempting to flee[,] caused the death of Roger Davis." (Tr. 141.) And, the trial court concluded: "If you find that each of these elements have been proven beyond a reasonable doubt, the defendant is guilty." (Tr. 141.) Thus, the instruction properly stated the law and properly stated that the burden of proof as to each essential element rested with the state.

The risk in the present case was that the initial jury verdict form, which did not include the "causing death" language, relieved the state of its burden of proof as to an essential element. The Minnesota Court of Appeals concluded that this risk was nullified by the trial court's corrective instruction. This conclusion is supported by the record. After the jury began deliberating, the following colloquy occurred:

> COURT: The record should reflect we're in open court outside the presence of the jury. Counsel and Mr. Davis are present.

> The jurors have sent out – it's not really a question. I'll read it to you in it's entirety, "Offenses charged and essential elements," and that's circled. "The defendant is charged with one count," colon, "Fleeing a Peace Officer in a Motor Vehicle," dash, "Causing Death," causing death underlined, "Verdict of guilty, 'We, the jury, find the defendant guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle,'" then circle and a line, "causing death is missing from the verdict." I assume from the verdict sheet.
>
> So they seem to be, I guess, confused because on the verdict of guilty it just says—and on the verdict of not guilty, it just says, "Fleeing a Peace Officer in a Motor Vehicle," and not "causing death."
>
> . . .
>
> STATE: Maybe you want to send them back with two new verdict forms with that on there.
>
> COURT: Mr. Davis?
>
> MR. DAVIS: Leave it just as it is.
>
> COURT: We can't leave it just as it is. . . .

(Tr. 153-154.) The trial court noted that the verdict forms should have read, "'We, the jury, find the defendant' both 'not guilty of Fleeing a Peace Officer in a Motor Vehicle – Causing death' and 'Guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle – Causing Death.'" (Tr. 155.) Neither the state nor the Petitioner had any objection to this revised language. (*Id.*) Subsequently, the jurors entered the courtroom:

> COURT: Ladies and gentlemen of the jury, I received a note from you, which pointed out that the offense charged is Fleeing a Peace Officer in a Motor Vehicle, dash Causing Death. The verdict forms, both the verdict of guilty and the verdict of not guilty forms, say that, "We, the jury, find the defendant not guilty," or "guilty of Fleeing a Peace Officer in a Motor Vehicle," and "Causing Death," is not there.
>
> I've often said that the jurors—the collective wisdom of the jury is great. And you have pointed out a mistake that I made in the

15

> verdict forms. The verdict forms should have said, "We, the jury, find the defendant not guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle – Causing Death," or "We, the jury, find the defendant guilty of the charge of Fleeing a Peace Officer in a Motor Vehicle – Causing Death."
>
> So you should consider the verdict forms that have been submitted to you as having that "causing death" language on them.

(Tr. 156.)

The Minnesota Court of Appeals' conclusion is also consistent with federal case law. "For a petitioner to obtain [habeas] relief based on a faulty jury instruction, the instruction must 'so infect[ ] the entire trial that the resulting conviction violates due process.'" *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396 (1973)). In the present case, there was no error in the instruction and any error in the verdict form was recognized by the jury and corrected on the record. *See United States v. Garcia*, 562 F.3d 947, 954 (8th Cir. 2009) (holding that there is no plain error where a district court misread jury instructions and immediately re-read the instructions in the correct form). Therefore, it cannot be said that there was a "fundamental defect that resulted in a miscarriage of justice." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

Thus, this Court concludes that Petitioner Davis's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1] should be denied to the extent that it is premised upon the verdict form.

### e. Petitioner's Statement to the IAU

Petitioner contends that the trial court erred by admitting his statement to the internal affairs unit, without first conducting an in-camera inspection. (Pet. 6, Aug. 18, 2009.) Petitioner contends that because he was in police custody at the time of the statement, a *Miranda* warning was required. (*Id.*)

This Court concludes that Petitioner has not exhausted his state remedies and is in procedural default as to this claim. Petitioner argued in his appellate brief to the Minnesota Court of Appeals that the district court erred by ordering the internal affairs unit of the Minneapolis Police Department to provide the prosecutor with a copy of Petitioner's statement to Sgt. Gross without first reviewing the statement *in camera* and determining whether the need for and benefits of disclosure outweighed the harm to the confidentiality interests affected by disclosure. (Pet.'s App. Br. 20) Petitioner only cites Minnesota authority in support of his argument. In his petition to this Court, Petitioner argues for the first time that he was in police custody at the time of the statement, and thus, a *Miranda* warning was required. But, in a footnote in his appellate brief, Petitioner stated: "Because the prosecutor used [Petitioner's] statement only for impeachment purposes, the correctness of the district court's finding that [Petitioner] was not in custody for *Miranda* purposes when providing the statement . . . is moot." (Pet.'s App. Br. 23.); *see Harris v. New York*, 401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971) (holding that credibility is appropriately impeached by use of his earlier conflicting statements taken in violation of *Miranda*). Thus, this issue was not put before the Minnesota Court of Appeals as one to be resolved, and even if it was exhausted, Petitioner would not be afforded any relief under 28 U.S.C. § 2254 because the case law is contrary to his contentions.

Petitioner's claim is procedurally barred because any constitutional claim Petitioner could have raised regarding the statement was known to Petitioner at the time of his direct appeal to the Minnesota Court of Appeals. Minn. Stat. § 590.01, subd. 1; *Cooper*, 745 N.W.2d at 190. Petitioner has made no argument or showing as to why he could not present this issue to the Minnesota Court of Appeals at the time of his direct appeal. "The fundamental miscarriage of justice exception is . . . only available to a petitioner who demonstrates that a constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Id.* (quotation omitted). Petitioner makes no argument as to how he was actually innocent or how the lack of an in camera review of the statement yielded a fundamental miscarriage of justice.

Therefore, this Court concludes that Petitioner Davis's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1] should be denied to the extent that it is premised upon the trial court's decision to permit the prosecution to view Petitioner's statement to the IAU without an in camera review.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Henry James Davis's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DENIED**.

Dated: 3/23/10

                s/ Arthur J. Boylan
                Arthur J. Boylan
                United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before  April 7, 2010  .